# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **AMY L. CORRIGAN, on behalf of herself and all others similarly situated,**<br><br>**Plaintiff,**<br><br>v.<br><br>**EF EDUCATION TOURS, INC., EF TRAVEL, INC., EF EDUCATIONAL EXCHANGE, INC., EF EDUCATION FIRST, INC., EF EXPLORE AMERICA, INC., EF INSTITUTE FOR CULTURAL EXCHANGE, INC., EF EDUCATION FIRST INTERNATIONAL, LTD., UNITED STATES FIRE INSURANCE COMPANY, SPECIALTY INSURANCE SOLUTIONS, INC., and SEVEN CORNERS, INC.**<br><br>**Defendants.** | Civil Action No.<br><br><br>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

## INTRODUCTION

This is a class action lawsuit for monetary and equitable relief arising out of Defendants' failures to offer a full cash refund and travel insurance benefits for purchased travel services, undelivered as a result of COVID-19.

## PARTIES

1.      Plaintiff, Amy Corrigan, is a citizen of the Commonwealth of Massachusetts residing at 122 Chestnut Street, Andover, Massachusetts.

2.      Defendant, EF Education Tours, Inc., on information and belief, is a Massachusetts corporation having a principal place of business at Two Education Circle, Cambridge, Massachusetts.

3. Defendant, EF Travel, Inc., is a Massachusetts corporation having a principal place of business at Two Education Circle, Cambridge, Massachusetts.

4. Defendant, EF Educational Exchange, Inc., is a Delaware corporation having a principal place of business at Two Education Circle, Cambridge, Massachusetts.

5. Defendant, EF Education First, Inc., is a California corporation having a principal place of business at Two Education Circle, Cambridge, Massachusetts.

6. Defendant, EF Explore America, Inc., is a California corporation having a principal place of business at Two Education Circle, Cambridge, Massachusetts.

7. Defendant, EF Institute for Cultural Exchange, Inc., is a California corporation having a principal place of business at Two Education Circle, Cambridge, Massachusetts.

8. Defendant, EF Education First International Ltd., is, on information and belief, a Swiss corporation having a principal place of business at Two Education Circle, Cambridge, Massachusetts.

9. Defendant, United States Fire Insurance Company ("USFIC"), is a Delaware corporation having a principal place of business at 305 Madison Avenue, Morristown, New Jersey.

10. Defendant, Specialty Insurance Solutions, Inc. ("SIS"), is a Kansas corporation having a principal place of business at 16201 West 95th Street, Suite 210, Lenexa, Kansas.

11. Defendant, Seven Corners, Inc. ("Seven Corners"), is an Indiana corporation having a principal place of business at 303 Congressional Boulevard, Carmel, Indiana.

**JURISDICTION AND VENUE**

12. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) in that this is a class action in which the amount in controversy exceeds $5,000,000 exclusive of interest

and costs, and at least one member of the putative class is a citizen of a different state than that of one of the Defendants.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events and/or omissions giving rise to the claims occurred within the District of Massachusetts.

**FACTUAL ALLEGATIONS**

14. On or about October 5, 2019, Mrs. Corrigan enrolled her daughter Samantha Corrigan ("Samantha"), an 8th grader at the Doherty Middle School in Andover, MA, in an educational tour of Spain, scheduled for April 17 through April 25, 2020, and offered to the Doherty students by EF Education Tours, Inc., EF Travel, Inc., EF Educational Exchange, Inc., EF Education First, Inc., EF Explore America, Inc., EF Institute for Cultural Exchange, Inc. and/or EF Education First International Ltd. (collectively "EF").

15. The EF website, under "Help Center" and "Payments & Policies," contains a document entitled "Booking Conditions," which contains a section entitled "Release and Agreement." According to EF, the Booking Conditions and Release and Agreement constitute the entire agreement between EF and Mrs. Corrigan.

16. EF did not disclose to Mrs. Corrigan the legal name(s), complete street business address(es), telephone number(s), and/or owner(s) of the seller of travel services or the provider(s) of the travel package. EF also did not disclose the complete terms of its cancellation policy.

17. The EF Booking Conditions make reference to EF Education First International, Ltd., a Swiss entity that is not registered to do business in Massachusetts.

18. Included in the Booking Conditions are the following provisions:

**Release and Agreement**

**I (or parent or legal guardian if enrollee is under 18 or a minor under any other applicable law) have read, understand and agree to the following in exchange for enrollment on an EF Educational Tour:**
….

3. Without limitation, EF and/or Me to We Trips, Ltd. in collaboration with Free The Children and its affiliated companies, partners, any companies acting on its behalf, each of their directors, officers, employees, volunteers, sponsors, independent contractors, agents, and authorized representatives (together referred to as "MTW") are not responsible for any injury, loss or damage to person or property, death, delay, or inconvenience in connection with the provision of any goods or services occasioned by or resulting from, but not limited to, acts of God; force majeure; acts of government; acts of war or civil unrest; insurrection or revolt; strikes or other labor activities; criminal, terrorist, or threatened terrorist activities of any kind; overbooking or downgrading of accommodations; structural or other defective conditions in houses, apartments, or other lodging facilities (or in any heating, plumbing, electrical, or structural problem therein); mechanical or other failure of airplanes or other means of transportation or for any failure of any transportation mechanism to arrive or depart timely or safely; dangers associated with or bites from animals, insects, or pests; sanitation problems; food poisoning; epidemics or the threat thereof; disease; lack of access to or quality of medical care; difficulty in evacuation in case of a medical or other emergency; or any negligent or willful act or failure to act of any third party or for any other cause beyond the direct control of EF or MTW.

4.      I agree to release EF and my school, my school district, my school board, MTW, my Group Leader, and Tour Director (collectively, the "Released Parties") from, and agree not to sue the Released Parties for, any and all claims of any nature related in any manner to my participation in an EF-sponsored tour or a Service Learning Tour, including, but not limited to, claims for negligence, breach of contract, breach of express or implied warranties, negligence or wrongful death, or any statutorily based claim. I hereby unconditionally and unequivocally waive any and all claims and demands for all damages, losses, costs and expenses of any nature whatsoever (including attorneys' fees) on account of or arising out of any and all personal injury, death, bodily injury, mental anguish, emotional distress, or property or other damage that I may suffer from any cause whatsoever related in any way to my participation in any EF-sponsored tour or a Service Learning Tour.
….

> 6. I further agree to release the Released Parties from any and all decisions to cancel, modify, or delay the tour as a result of unforeseeable events that are beyond the reasonable control of EF or MTW or which become necessary or advisable so as to increase the quality of the tour.
>
> 7. I agree that this Release applies to and binds myself and my minor child enrolling on tour (if applicable) along with my personal representatives, executors, heirs, and family.

19. On October 6, 2019, EF charged $4,180.00 to Mrs. Corrigan's credit card, thereby paying in full for the EF travel services.

20. Soon after enrolling Samantha, Mrs. Corrigan began receiving email and telephone travel insurance-related marketing solicitations from EF.

21. On November 21, 2019, Mrs. Corrigan received a telephone call from an EF Travelers Support Agent, who touted the benefits and strongly recommended the purchase of the Global Travel Protection Plan for Samantha's tour at a one-time premium of $165.00.

22. EF described its Global Travel Protection Plan as follows: "Travelers can choose to enroll in the Global Travel Protection Plan, which we offer because many insurance companies do not provide adequate coverage for people traveling abroad. Designed specifically with EF travelers in mind, this affordable plan provides protection for travelers should something unexpected happen before, en route or during the tour."

23. Mrs. Corrigan informed the EF Travelers Support Agent that she wanted to review the policy terms before authorizing payment.

24. Later that day, the EF Travelers Support Agent emailed Mrs. Corrigan a document on SIS letterhead entitled Travel Insurance Guide, which contained a "quick reference" to Global Travel Protection Plan benefits and an online link to the USFIC Travel Protection Certificate, which contained the policy terms (the "Policy").

25. Mrs. Corrigan agreed to purchase the Policy and paid the $165.00 premium online through her EF account.

26. The Policy provides, among other things, for full reimbursement of "Trip Cost" upon cancellation of a "Trip" for a covered loss, to wit:

> SECTION I. COVERAGES
>
> TRIP CANCELLATION
>
> Benefits will be paid, up to the Maximum Benefit Amount shown in the Schedule of Benefits, to reimburse You for the amount of the Published Penalties and unused non-refundable Prepaid Payments or Deposits You paid for Travel Arrangements when You are prevented from taking Your Trip due to:
> ….
> 3. For the Other Covered Reasons listed below; provided such circumstances occur while coverage is in effect.
>
> "Other Covered Reasons" means: a) You being ... **quarantined**….

(Emphasis supplied).

27. The term "quarantine" is not defined in the Policy glossary.

28. Webster's New 20th Century defines quarantine as "any isolation or restriction on travel imposed to keep contagious diseases, insect pests, etc. from spreading."

29. Black's Law Dictionary defines quarantine as "The keeping of persons, when suspected of having been exposed to an infectious disease, out of a community, or to confine them to given place therein, and to prevent intercourse between them and people generally of the community."

30. On March 10, 2020, Massachusetts Governor Charles Baker declared a State of Emergency in Massachusetts.

31. On March 11, 2020, the World Health Organization declared the COVID-19 outbreak a worldwide pandemic.

32. On March 11, 2020, United States President Donald J. Trump declared a European travel ban, restricting travel between the U.S. and Europe. This ban remains in effect.

33. On March 12, 2020, Spanish authorities ordered the closure of all schools.

34. On March 12, 2020, EF sent correspondence to Samantha's Spanish teacher and Tour Group Leader, Leela Bakshi, announcing that EF was in the process of bringing home all students on European tours. EF also announced to Ms. Bakshi that it was "postponing" all tours scheduled for March and April 2020.

35. On March 16, 2020, Spanish authorities declared a State of Emergency, banning all public movement except to buy essentials and/or to work.

36. On March 23, 2020, Governor Baker issued an Executive Order which, among other provisions, restricted the public movement of non-essential persons and banned congregations of 10 or more persons.

37. On March 25, 2020, Governor Baker issued an Executive Order closing all public and private schools in Massachusetts for a period of 3 weeks. This Order was subsequently extended through the end of the current school year.

38. On March 31, 2020, the U.S. Department of State issued a Global Level 4 Health Advisory, advising U.S. citizens to avoid all international travel due to the global COVID-19 pandemic.

39. On April 1, 2020, EF published to its website a Frequently Asked Questions notice, which included the following provisions:

> 5. What are my refund options? We know that the decision to travel in the next few months is a very personal one. That's why we have amended our policies so that you can elect to take a Future Travel Voucher even if your group is currently continuing to travel as planned. Taking a Future Travel Voucher instead of canceling allows you to protect your full investment and travel at a

later date that works for you—giving you the option to use the voucher on a variety of EF programs. In addition, Future Travel Vouchers can also be redeemed for all of your monies paid to EF, less $1,000, which for many people is more advantageous than their current cancellation fees. We made the decision several weeks ago to "freeze" cancellation fees, meaning that the cancellation fee bracket you were in as of February 24 would not change until April 30 to allow you more time to make a decision. The chart below outlines the amended options you and your group have available:

**Effective through April 30, 2020 for tours departing in 2020**

| ORIGINAL TOUR'S DEPARTURE DATE | AMENDED COVID-19 CANCELLATION OPTIONS |
|---|---|
| **March 1 – April 7** | Future Travel Voucher for 100% of all monies paid by EF good towards future travel |
| | Redeem Future Travel Voucher for a cash refund of all monies paid to EF, less $1,000 |
| **April 8 – June 12** | Future Travel Voucher for 100% of all monies paid to EF good towards future travel |
| | Redeem Future Travel Voucher for a cash refund of all monies paid to EF, less $1,000 |
| | Standard cancellation: cash refund less 50% of program fee and any non-refundable fees* |
| **June 13 – July 22** | Future Travel Voucher for 100% of all monies paid to EF good towards future travel |
| | Standard cancellation: cash refund less $500 cancellation fee and any non-refundable fees* |
| **July 23 – Sept 30** | Future Travel Voucher for 100% of all monies paid to EF good towards future travel |
| | Standard cancellation: cash refund less $300 cancellation fee and any non-refundable fees* |

*Standard cancellation fee as of February 24th*

6. Why can't I get all my money back? We begin planning your tour as soon as you enroll, to ensure the highest quality service at the lowest price. For example, EF Educational Tours books large volumes of flights, hotels and entrances months, if not years, in advance. Many of these at a group booking level which is subject to different cancellation rules than typical consumers. For this reason, EF has designed its cancellation policies to take into consideration the investments we make in your tour long before it departs. Currently we are in an unprecedented situation that is affecting everyone across the globe. As such we have made adjustments to our standard policies to provide expanded options

to our groups during this time. In addition to freezing our cancellation fees so that they do not increase through April 30th, we are also offering very flexible rebooking options, holding pricing through 2021 for any of our groups that want to move their tour to a later date and making an exception by offering Future Travel Vouchers to any individual traveler who cannot travel on their group's future tour. We have also now made the vouchers even more valuable – Future Travel Vouchers will now be issued for all monies paid to EF including all non-refundables. Additionally, travelers may now redeem their Future Travel Voucher for a refund of all monies paid to EF minus $1,000. This amount allows us to only partially cover costs related to non-recoverable payments to our suppliers, our staff, and the investment we continue to make in itinerary, date and destination flexibility.

40. On April 2, 2020, Mrs. Corrigan filed a claim in accordance with the Policy and instructions provided on the EF website. Mrs. Corrigan also provided proof of payment of the Trip Cost and insurance premium, which had been processed through the EF website.

41. On April 15, 2020, EF updated its website and published answers to Global Travel Protection FAQs with the following caveat: "EF is not the licensed agent for these programs but here is some information our program manager (Specialty Insurance Solutions) provided." Included among the FAQs and answers were the following:

> **What does Global Travel Protection cover?**
> We encourage travelers to purchase Global Travel Protection as it helps protect you for a variety of circumstances before and while on your trip. Our Global Travel Protection offered by Specialty Insurance Solutions and underwritten by United States Fire Insurance Company can cover situations such as needing to cancel your trip including but not limited to reasons of serious injury or illness requiring hospitalization, or involuntary employer termination and layoff….
>
> The events related to COVID-19 in general are not a covered reason for cancellation under this policy. However, EF Educational Tours is providing additional assistance beyond the terms in our standard booking conditions. All groups departing after February 24, 2020 have the option to rebook to another EF Educational Tour within 2020 or 2021. EF will absorb any price increases between the cancelled tour and the new tour, up to a $300 difference. If travelers decide to not rebook with their group,

they are offered an electronic Future Travel Voucher which can be redeemed for any EF product until September 30, 2022 or majority refund. For more information about EF Educational Tours' policies related to COVID-19, see here.

….

**Why does Travel Protection not cover COVID-19 for my tour cancellation?**
Travel insurances normally cover specific reasons why you cancel for tour cancellation. There are 9 different reasons that Global Travel Protection policy covers, focusing on individuals and their specific situations in mind. Please see the full policy for further details.

**My state has a stay-at-home order in place, does that qualify as a "quarantine" to be a covered reason for cancellation?**
While there is policy language for cancellation due to quarantine, we have been advised by the insurance carrier that it applies to the individual traveler with a current illness or direct exposure requiring the quarantine of that specific individual at the time of the travel. If you have been personally quarantined by a physician, please submit your claim with the documentation naming you as the quarantined individual. Please note that Federal, State or County blanket stay-at-home or shelter-in-place orders do not meet the definition of quarantine under the policy.

42. On April 23, 2020, Mrs. Corrigan received an email from Payton Lantz, Claims Support Specialist, EF Tours. The email header contained the Seven Corners logo. Mr. Lantz acknowledged receipt of Mrs. Corrigan's claim but warned that claims were taking up to 30 days to review due to the "ongoing pandemic."

43. On May 19, 2020, EF, USFIC, SIS, and/or Seven Corners denied Mrs. Corrigan's claim by emailed letter, which stated in part:

> To the Parent/Guardian of Samantha,
>
> As the claims administrator for United States Fire Insurance Company, we have received your Trip Cancellation claim. We have reviewed the facts related to your loss and have determined that we are unable to make payment for the following reasons listed below.
>
> The information provided indicates **your trip was cancelled due to your state quarantine** and the threat of the COVID-19

>   (Coronavirus) outbreak. The policy specifically outlines when benefits would be payable for cancellation and **unfortunately the reason provided is not a covered reason and would make your claim ineligible for payment**.
>
>   Please refer to your policy "SECTION I. COVERAGES" TRIP CANCELLATION" for a complete list of all covered perils.

(Emphasis supplied.)

44. On May 21, 2020, the EF website contained a page entitled "Booking Conditions Temporary Enhancements to Support Our Travelers," which described the refund policy as follows:

>   **Our standard Booking Conditions state:**
>   "The future travel voucher is not a merchandise credit or a gift certificate and may not be redeemed for cash."
>
>   **Our temporary enhancement to this policy:**
>   EF future travel vouchers may be **redeemed for a refund** of all monies paid less $500 for travelers originally scheduled to depart on or after May 15, 2020, **or all monies paid less $565 for travelers originally scheduled to depart between February 24 and May 14, 2020**.

(Emphasis supplied).

45. On May 21, 2020, simultaneous with the above-referenced refund description, Mrs. Corrigan's Travel Voucher on the EF website described the refund policy as follows:

>   **Prefer a refund?**
>   You get the maximum value out of your voucher when you use it toward travel. Plus, you have more than two years to explore your possibilities.
>
>   However, if you know you won't be able to travel and would prefer a cash refund, **you can exchange your voucher for cash in the amount of all monies paid to EF less $1,000**. (This allows us to partially cover costs related to non-recoverable payments to our suppliers, our staff, and the investment we have always made and continue to make in itinerary, date, and destination flexibility.)

(Emphasis supplied).

46. On May 21, 2020, simultaneous with the above-referenced refund descriptions, Mrs. Corrigan's account contained a link to a "Request a refund" page which described the refund policy as follows:

> **Request a refund**
> You get the maximum value of your coupon when you use it with one of EF's travel products. However, if you know that you will not be able to travel through now until September 30, 2022 and would prefer a refund, **you can exchange the coupon for all money paid to EF without the non-refundable deposit indicated on the coupon.**
>
> This amount allows us to partially cover the costs related to non-recoverable payments to our suppliers, Travel Directors and local guides, our employees, and the investment that we have always and will continue to make in the flexibility of the itinerary, dates and destination.
>
> Note: If you are requesting multiple coupon reimbursement, please only submit one form per coupon.
>
> Please fill out the following information. Our team will process your request, and will contact you if you have questions. Otherwise, you will receive your refund within 6 weeks.

(Emphasis supplied).

47. On May 22, 2020, Samantha's Spanish teacher/Tour Group Leader, Ms. Bakshi, received the following email from EF and forwarded it to Mrs. Corrigan:

> Dear Leela,
>
> We hope this email finds you safe and well.
>
> We wanted to update you on news we will be sending to Spring departure group members who have asked for a refund. We have been working hard across all aspects of our business to improve refund terms for travelers who had their original Spring tour departure dates postponed due to the global health pandemic. Along with changes we've made to our own business, we have also been able to successfully secure more funds from our vendors and are glad to pass those savings along to our customers. Travelers who request or have requested a refund will now receive all monies paid to EF less $565. Accounts will be automatically updated within 4 – 6 weeks and there is no action needed from you or your traveler.

12

> Please remember that you can always find the latest updates to our policies <u>here</u>.
>
> Thank you for everything you do and please be in touch if we can help.
>
> EF Educational Tours

48. Despite being the consumer who paid for the undelivered travel services, Mrs. Corrigan did not receive an email directly from EF to update her on the changes to the refund policy.

49. On May 25, 2020, the EF website contained a set of Frequently Asked Questions which included:

> **Frequently asked questions**
>
> ….
>
> **5. What are my refund options?**
>
> We know that the decision to travel in the next few months is a very personal one. That's why we have amended our policies so that you can elect to take a Future Travel Voucher even if your group is currently continuing to travel as planned. Taking a Future Travel Voucher instead of canceling allows you to protect your full investment and travel at a later date that works for you—giving you the option to use the voucher on a variety of EF Programs. In addition, Future Travel Vouchers can also be redeemed for a refund. For travelers who were originally scheduled to depart through May 14, you may exchange your voucher for a refund of all monies paid to EF, less $565. For travelers with original departure dates on or after May 15, you may exchange your voucher for a refund of all monies paid, less $500.
> ….
>
> **8. I purchased Global Travel Protection, can I file a claim due to COVID-19?**
>
> EF Educational Tours' travelers are offered insurance through a plan provided by Specialty Insurance Solutions and underwritten by United States Fire Insurance Company. The primary benefits of the policy prior to tour are a refund of your program price less nonrefundable fees if a traveler needs to cancel from tour due to reasons that can include but are not limited to serious injury or illness requiring hospitalization and

involuntary employer termination or layoff. On tour the policy provides coverage for incidents such as lost baggage and flight delays as well as coverage of hospital bills, doctors' fees and medical transportation for illnesses or injury. Based on the circumstances, travelers who are diagnosed with COVID-19 prior to tour or parents who have recently lost their job may qualify for cancellation coverage. For a full explanation of benefits provided under this policy or to submit a claim click here. We recommend that you reach out to Specialty Insurance Solutions directly if you have additional questions regarding your specific circumstances.

50. To date, Mrs. Corrigan has received no compensation from EF, USFIC, SIS, or Seven Corners.

## CLASS ACTION ALLEGATIONS

51. Plaintiff brings this action pursuant to the provisions of Rule 23(b)(1), (b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure and/or G.L. c. 93A, § 9 on behalf of herself individually and on behalf of:

>   A.   A Nationwide Class defined as:
>
>   All persons who purchased EF travel services[1] to be provided on or after February 24, 2020, who did not receive the purchased travel services, and who were not offered a full cash refund of undelivered, purchased travel services;
>
>   B.   A Massachusetts Sub-Class defined as:
>
>   All persons in Massachusetts who purchased EF travel services to be provided on or after February 24, 2020, who did not receive the purchased travel services, and who were not offered a full cash refund of undelivered, purchased travel services;
>
>   C.   A Nationwide Class defined as:
>
>   All persons who purchased from EF, USFIC, SIS and/or Seven Corners a trip cancellation insurance policy for EF travel services scheduled to begin on or after February 24, 2020, whose purchased travel services were not provided due to COVID-19, and who filed a claim but were denied coverage;
>
>   D.   A Massachusetts Sub-Class defined as:

---

[1] Unless otherwise indicated, all terms herein are as defined in 940 C.M.R. § 15.00.

> All persons who purchased from EF, USFIC, SIS and/or Seven Corners a trip cancellation insurance policy for EF travel services scheduled to begin on or after February 24, 2020, whose purchased travel services were not provided due to COVID-19, and who filed a claim but were denied coverage; and

E.   Such other class or classes as determined by the Court.

52.   Plaintiff reserves the right to modify, expand, or amend the definitions of the proposed Classes.

53.   This action is properly maintainable as a class action.

54.   Plaintiff does not know the exact number of members of the proposed Classes since that information is in the control of Defendants, but the members of the Classes are so numerous that joinder of all members is impractical.

55.   There are questions of law or fact common to the Classes that predominate over any questions affecting only individual members.

56.   Plaintiff's claims are typical of the claims of the Classes, because all members of the Classes will be similarly affected by the judgment sought in this action.

57.   Plaintiff will fairly and adequately protect the interest of the members of the Classes and have retained counsel competent and experienced in class litigation.

58.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all Class members is impracticable. There will be no difficulty in the management of this action as a class action.

59.   Plaintiff knows of no obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action. Rule 23 provides the Court with the authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges.   The Court may, on motion of Plaintiff or on its own

determination, certify nationwide and statewide classes for claims sharing common legal questions; use the provisions of Rule 23(c)(4) to certify particular claims, issues, or common questions of law or of fact for class-wide adjudication; certify and adjudicate bellwether class claims; and use Rule 23(c)(5) to divide any Class into subclasses.

## CLAIMS FOR RELIEF

### COUNT ONE
### Breach of Contract
### (On Behalf of Plaintiff and the Class)

60. Plaintiff repeats and incorporates by reference each and every allegation above.

61. Defendants made an offer to Plaintiff/Class Members concerning travel services containing illegal provisions and illusory promises.

62. Defendants made an offer to Plaintiff/Class Members concerning travel insurance.

63. Plaintiff/Class Members made payments to Defendants.

64. Plaintiff/Class Members and Defendants formed/may have formed valid, binding contracts.

65. If so, Defendants breached the contracts by failing and refusing to offer full cash refunds and travel insurance benefits for undelivered, purchased travel services as a result of COVID-19.

66. Plaintiff/Class Members suffered damage, including consequential damages, as a result of Defendants' breaches of contract.

### COUNT TWO
### Breach of Duty of Good Faith & Fair Dealing
### (On Behalf of Plaintiff and the Class)

67. Plaintiff repeats and incorporates by reference each and every allegation above.

68. Defendants were obligated to act in good faith and to deal fairly with Plaintiff/Class Members.

69. Defendants breached the covenant of good faith and fair dealing by failing and refusing to offer full cash refunds and travel insurance benefits.

70. Plaintiff/Class Members suffered damage as a result of Defendants' breach of the covenant of good faith and fair dealing.

### COUNT THREE
### Unjust Enrichment
### (On Behalf of Plaintiff and the Class)

71. Plaintiff repeats and incorporates by reference each and every allegation above.

72. Defendants received payments from Plaintiff/Class Members.

73. Defendants have been unjustly enriched to the detriment of Plaintiff/Class Members.

### COUNT FOUR
### Conversion
### (On Behalf of Plaintiff and Class)

74. Plaintiff repeats and incorporates by reference each and every allegation above.

75. Plaintiff/Class Members have property rights to refunds of amounts paid for undelivered travel services purchased from Defendants.

76. Defendants intentionally exercised control over and/or interfered with such rights.

77. Plaintiff/Class Members have suffered damage as a result.

### PRAYERS FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and all others similarly situated, hereby demands the following relief:

(1) Grant class certification allowing this action to proceed as a class action against Defendants.

(2) Award Plaintiff/Class Members damages, including consequential damages, in amounts to be determined at trial.

(3) Enter judgment in favor of Plaintiff/Class Members and against Defendants.

(4) Award Plaintiff/Class Members prejudgment interest and post judgment interest.

(5) Order restitution.

(6) Order disgorgement of ill-gotten gains.

(7) Issue a permanent injunction to enjoin Defendants from engaging in the conduct described herein.

(8) Grant any other appropriate injunctive, declaratory and equitable relief.

(9) Award Plaintiff/Class Members their reasonable attorneys' fees and costs.

(10) Order such other relief as the Court deems just.

## JURY DEMAND

Plaintiff/Class Members demand a jury trial on all issues so triable.

Respectfully submitted,
By her attorney,

__/s/  Barry M. Altman_____
Barry M. Altman, BBO #016710
ALTMAN & ALTMAN
404 Main Street, Suite #3
Wilmington, MA 01887
(781) 944-5441
baltman@altmanattorneys.com